UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BEVERLY ANDERSON
Individually and as Special Administrator
of the Estate of Lloyd Anderson, Deceased,

        Plaintiff,

  v.                                            Case No. 11-C-0061

THE PROCTOR & GAMBLE PAPER
PRODUCTS COMPANY,

        Defendant.

**DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Beverly Anderson is the administrator of the estate of her husband, Lloyd Anderson, who worked as a union electrician at various facilities in and around Green Bay, Wisconsin for more than 40 years until his retirement in 1992. Plaintiff alleges her husband became ill as a result of occupational asbestos exposure, and she brought claims against various defendants, including a negligence claim against Defendant The Procter & Gamble Paper Products Company (P&GPPC), the owner of the Charmin paper mill where Lloyd Anderson worked as a contract electrician for a number of years. Plaintiff's action was consolidated with numerous cases into the MDL 875 Asbestos litigation, presided over by U.S. District Judge Eduardo C. Robreno in the Eastern District of Pennsylvania. P&GPPC moved for summary judgment, arguing that it is entitled to judgment in its favor because (1) it cannot be liable for harm to an employee of an independent contractor who is working on its premises, and (2) plaintiff's claims are barred by the Wisconsin statute of repose. After briefing was complete, Judge Robreno concluded that P&GPPC's motion raised unique issues

under Wisconsin law and remanded the case. This Court previously granted the plaintiff's motion to file an amended response to P&GPPC's amended summary judgment motion, and P&GPPC subsequently filed an amended reply. The briefing is now complete, and for the reasons that follow, P&GPPC's motion will be denied.

**BACKGROUND**[1]

Lloyd Anderson worked as a union electrician with the International Brotherhood of Electrical Workers Local 158 in Green Bay, Wisconsin. Anderson began working as an apprentice from approximately 1948, and 1952 until his retirement in 1992, Anderson worked as a journeyman electrician and foreman for numerous electrical contractors at a variety of locations, including P&GPPC's Charmin Paper Mill in Green Bay. He estimated that approximately 50 percent of his career was spent working at the Charmin mill between 1955 and 1979, including a period of 10 years of steady work at the mill.

Plaintiff's claim against P&GPPC is based on its status as a nonemployer owner of the mill where Anderson performed electrical work on the mill's machinery, including "speeding up" paper machines, wiring new machines, maintaining and blowing out switchgear and motors, or performing general electrical work in the warehouse. He also worked with maintenance personnel employed

---

[1] The parties have not submitted statements of proposed material facts, as required by Civil L.R. 56(b). As the original briefing and P&GPPC's amended motion for summary judgment were filed in the MDL litigation in the Eastern District of Pennsylvania, the parties were not subject to this district's local rules. As a result, the Court has considered the facts cited by the parties and the other materials in the record. Fed. R. Civ. P. 56(c).

2

by P&GPPC to repair paper machines after they broke down. In addition, Anderson worked on a large expansion in the 1970s to put in two new paper machines in the Charmin mill. Generally, the crews Anderson was on spent half of their time on new construction and renovation and half of their time remodeling and updating work.

Plaintiff alleges that at P&GPPC, Anderson was exposed to asbestos in a number of ways. Plaintiff contends that the mill contained thousands of feet of insulated electrical, steam, and water pipes, all of which contained asbestos in a variety of forms. The plant was organized so that "all of the process infrastructure" was suspended under the ceilings in layers containing "racks and racks upon racks upon racks of process piping, electrical piping, steam piping, cable trays, electrical facility." (LaHaye Dep., Ex. 4 at 137, ECF No. 76.) Plaintiff alleges the electricians regularly had to cut through the insulation in order to get to the electrical wiring. Likewise, plaintiff contends the maintenance and blow-out of switchgear caused significant asbestos exposure. In addition, because the electricians worked on "maintenance days" when the machines were shut down, Anderson often worked in close proximity to pipefitters, pipe insulators, and other P&GPPC employees who were replacing steam pipe insulation, performing repairs, or cleaning up insulation and debris simultaneously. Plaintiff alleges that removing or cutting the insulation created a "plume of cloud dust" due to the brittle nature of the insulation and working in the dusty conditions created by the removal and replacement of the insulation was a "normal, everyday process" for the electricians when assigned to the mill. (Comins Dep., Ex. 3 at 78, ECF No. 76.)

Generally, Anderson's work was not directed by P&GPPC. Instead, daily instruction and oversight of the electricians came from the electrical contractors. But while Anderson furnished his own hand tools, in general, P&GPPC furnished all materials for the electrical work, including

3

asbestos-containing micarta, and Anderson worked on P&GPPC's machinery. P&GPPC also controlled the scheduling of insulation teardown and switchgear maintenance. Plaintiff contends that P&GPPC employed inspectors who would check that repairs were completed correctly. These inspectors included P&GPPC's project engineers, who directed "prestart" inspections. Plaintiff also alleges that P&GPPC provided checklists directing the maintenance work. She asserts that Anderson never received warnings from P&GPPC about the dangers of asbestos, or even that the pipe insulation contained asbestos at all.

Anderson was diagnosed with non-small cell lung cancer in July 2009. He died on November 28, 2011. Plaintiff has submitted expert opinions that Anderson's lung cancer, asbestosis, and pulmonary fibrosis were caused by occupational exposure to asbestos.

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the cause of action to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury,

4

would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### A.   Duty of a Premises Owner to an Employee of Independent Contractor

P&GPPC first argues that it cannot be liable for harm to an employee of an independent contractor performing work on its premises. Generally, a principal employer is only liable in tort for injuries sustained by an independent contractor's employee while he is performing the contracted work if (1) the owner commits an affirmative act of negligence, or (2) the employee was injured while engaged in an extrahazardous activity. *Tatera v. FMC Corp.*, 2010 WI 90, ¶ 2; *Wagner v. Continental Casualty Co.*, 143 Wis. 2d 379, 400-01, 421 N.W.2d 835, 838 (1988). In *Tatera*, the plaintiff brought a products liability action after her husband died of mesothelioma caused by exposure to asbestos in friction disk components of electric brake systems manufactured by the defendant. *Tatera*, 210 WI 90, ¶ 5. The defendant was not plaintiff's employer; rather, defendant contracted out its machining work to plaintiff's employer. *Id.* The court held that the defendant's alleged negligent conduct–supplying component parts containing asbestos to contract machiners–did not constitute an affirmative act of negligence because failure to warn of or investigate asbestos hazards constituted passive misconduct. *Id.* ¶¶ 29-31. Likewise, working with asbestos products, while an inherently dangerous activity, is nevertheless not an extrahazardous activity because protective measures can be taken to avoid inhalation of asbestos dust. *Id.* ¶ 36.

5

P&GPPC argues that based on *Tatera*, it owed no duty to Anderson unless plaintiff can prove that P&GPPC committed an affirmative act of negligence, or unless Anderson was injured while engaging in an ultrahazardous activity, neither of which applies here. Plaintiff responds that *Tatera* is inapposite because the standard of care created by the Wisconsin Safe Place Statute, Wis. Stat. § 101.11 applies here. The safe place statute creates a non-delegable statutory duty for premises owners that creates legal obligations distinct from those arising under common law. The safe place statute provides that:

> Every employer . . . shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

Wis. Stat. § 101.11(1).

The act "is a negligence statute that, rather than creating a distinct cause of action, instead establishes a duty greater than that of ordinary care imposed at common law." *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 18, 245 Wis. 2d 560, 568, 630 N.W.2d 517, 521. It imposes a duty on premises owners to construct, repair, and maintain premises so as to make them safe for employees or "frequenters." *Barth v. Downey Co., Inc.*, 71 Wis. 2d 775, 778, 239 N.W.2d 92, 94 (Wis. 1976). An employee of an independent contractor doing work on the premises is a frequenter working in a place of employment. *Hortman v. Becker Const. Co., Inc.*, 92 Wis. 2d 210, 226, 284 N.W.2d 621, 628 (1979). The statute also requires owners to furnish and use safety devices and safeguards, and to adopt and use methods and processes reasonably adequate to render the place of

6

employment safe. While an owner does not need to guarantee absolute safety, it must provide an environment as free from danger to the life, health, safety, or welfare of employees and frequenters as the nature of the premises will reasonably permit. *Wagner v. Cincinnati Cas. Co.*, 2011 WI App 85, ¶ 14-15, 334 Wis. 2d 516, 525, 800 N.W.2d 27, 31.

The statute protects against unsafe "structural defects" and unsafe "conditions associated with the structure" of a building. *Id.* ¶ 16-17. Where the hazardous condition results from an unsafe condition associated with the structure, such as a defect attributable to the failure to safely repair or maintain, liability will only be found where the owner had actual or constructive notice of the defect. *Szalacinski v. Campbell*, 2008 WI App 150, ¶ 26, 314 Wis. 2d 286, 306, 760 N.W.2d 420, 429 (citing *Barry*, 2001 WI 101, ¶¶ 22-23). In contrast, if the hazard is a structural defect in the original structural design or construction of the building itself, an owner or employer is liable regardless of whether he or she knew or should have known of the defect. *Id.*

P&GPPC first argues that plaintiff cannot rely on the safe place statute to defeat summary judgment because plaintiff failed to plead a violation of the statute and has only raised it for the first time in response to P&GPPC's motion for summary judgment. (Def.'s Reply Br. 6, ECF No. 78 (citing *Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶ 26, 319 Wis. 2d 622, 769 N.W.2d 1).) P&GPPC contends that *Umansky* stands for the proposition that a violation of the safe place statute must be pled in the complaint, and argues the case is controlling because "a more identical situation than the one we find here could not be conceived." (*Id.*) But that decision addressed the "narrow question" of whether the defendant, a state employee, had a ministerial duty arising under the Occupational Safety and Health Administration regulations. *Umansky*, 2009 WI 82, ¶ 2. The *defendant* tried to raise the safe place statute in support of his argument that his employer could not delegate its duty to make safe to officers or employees such as himself. *Id.* ¶ 26-27. The court explained:

7

> The complaint of the [plaintiffs] makes it clear that the claim underlying the questions we address here *as to immunity* is one of common law negligence. We agree with the court of appeals that *there is "no logical connection between an employer's inability to shift its liability for a safe place violation to a third party and its ability to delegate to an employee the duty to comply with applicable safety regulations."* This is not a safe-place statute case, and the rules concerning such claims do not govern here.

*Id.* ¶ 27 (internal citations omitted) (emphasis added). Contrary to P&GPPC's claim, *Umansky* did not hold that the reason the case was "not a safe-place statute case" was because the plaintiff had not pled a violation of the statute. Here, plaintiff's complaint states a claim for "negligence–premise owner." This is sufficient to put defendant on notice of plaintiff's claim, and contrary to P&GPPC's contention, a plaintiff need not set forth explicitly its theory of recovery. *Gennrich v. Zurich Am. Ins. Co.*, 2010 WI App 117, ¶ 9, 329 Wis. 2d 91, 100, 789 N.W.2d 106, 110 ("The party moving for summary judgment is not entitled to limit consideration to the legal theories that party chooses if other legal theories are supported by the factual submissions of the parties.").

P&GPPC also argues that in any event, the safe place statute does not apply because "even if the alleged duty had been referenced in the Second Amended Complaint, which it was not, that duty would necessarily be addressed by the general rule in *Tatera*." (Def.'s Reply Br. 6, ECF No. 78.) P&GPPC confuses the issue. While P&GPPC may be correct that under the reasoning in *Tatera*, it did not owe a duty to Anderson, the safe place statute establishes a different, heightened *statutory* duty owed by a premises owner to "frequenters" such as subcontractors. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 22, 274 Wis. 2d 162, 178-79, 682 N.W.2d 857, 864-65 ("What constitutes 'reasonable care' in a given situation may be defined by case law or by statute. We long have held that the safe-place statute establishes a standard of care: to make the place as safe as the nature of the premises reasonably permits."). The safe place statute

8

addresses unsafe conditions and structural defects, whereas common law negligence addresses negligent acts. *Genrich v. Zurich Am. Ins. Co.*, 2010 WI App. 117, ¶ 23 (citing *Megal*, 2004 WI 98, ¶ 23.) Where the safe place statute applies, it supersedes the common law duty of reasonable care discussed and applied in *Tatera*. Thus, P&GPPC is wrong in concluding that "*Tatera* necessarily negates Plaintiff's efforts to employ the [safe place statute] - either specifically or as a basis for a common law negligence claim." (Def.'s Reply Br. 6, ECF No. 78.) P&GPPC maintains that plaintiff must still prove that P&GPPC committed some affirmative act, but as explained, the safe place statute is concerned with unsafe conditions, and imposes a duty to make safe without requiring proof of any affirmative act.

Here, plaintiff has submitted evidence sufficient to support its claim that P&GPPC failed to meet its duty to make the Charmin mill safe for those who frequented the premises. While the parties have not discussed whether Anderson's alleged exposure to asbestos-laden insulation and materials at the Charmin mill was a product of the design and construction of the building itself, as opposed to a condition created by the failure to properly maintain or repair the premises, the distinction is immaterial at this time. Plaintiff has put forth facts supporting an inference that P&GPPC had at least constructive, if not actual notice that asbestos was present in the mill. An owner "is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it." *Megal*, 2004 WI 98, ¶ 12. Whether a premises owner had actual or constructive notice is generally a jury question. *Gulbrandsen v. H & D, Inc.*, 2009 WI App. 138, ¶ 14, 321 Wis. 2d 410, 773 N.W.2d 506. The evidence shows that P&GPPC knew (or should have known) of the dangers of asbestos insulation at least since 1971, when the Occupational Safety and Health Act began

9

regulating asbestos in the workplace. (*See, e.g.*, Anderson Dep. Ex. 1 at 45-46; Comins Dep. Ex. 3 at 91-92, ECF No. 76; LaHaye Dep. Ex. 4 at 157-59, ECF No. 76.) Moreover, P&GPPC knew long before that asbestos insulation was installed in its pipes, that it was regularly disturbed and released into the air during pipe repairs such as electrical work, and that there was a sizeable amount of dust generated. (Anderson Dep. Ex. 1 at 45-46, ECF No. 76; Comins Dep. Ex. 3 at 78-81, ECF No. 76.) *See also Neitzke v. Kraft-Phenix Dairies*, 214 Wis. 441, 253 N.W. 579, 582 (1934) ("[T]he employer's duty is to make the premises safe for the performance of acts which he knows or reasonably should know are going to be performed thereon.").

But P&GPPC also argues that if the safe place statute applies, an owner cannot be liable if it does not have control over the work site. P&GPPC argues that Anderson never took direction from P&GPPC and therefore, it did not have control and cannot be liable. But P&GPPC's argument to this end is unconvincing. Under the safe place statute, an owner is only absolved of its statutory duty if it relinquishes complete control of the premises to the contractor, and the premises are in a safe condition at that time. *Hrabak v. Madison Gas & Elec. Co.*, 240 F.2d 472, 477 (7th Cir. 1957); *Kaltenbrun v. City of Port Washington*, 156 Wis. 2d 634, 646, 457 N.W.2d 527, 531 (Wis. Ct. App. 1990) ("A safe-place duty is imposed upon an owner only when there is retention of a right of control beyond mere legal ownership or right of inspection."). The owner must have control over the place such that it can carry out its duty to furnish a safe place of employment, but the "control and custody of the premises need not be exclusive, nor is it necessary to have control for all purposes." *Schwenn v. Loraine Hotel Co.*, 14 Wis. 2d 601, 607, 111 N.W.2d 495, 498 (1961).

Here, P&GPPC owned and operated the factory where Anderson performed electrical work, and plaintiff has put forth evidence that Anderson performed his work alongside P&GPPC

10

employees and that P&GPPC exercised oversight of the contract electricians' work. Moreover, P&GPPC cannot claim that it had no control whatsoever over the electrician's work, as the contract electricians were hired by P&GPPC to make P&GPPC's own machines operational. This is enough to create a genuine dispute of fact. *See Lee v. Junkans*, 18 Wis. 2d 56, 61, 117 N.W.2d 614 (1962) ("[C]ontrol is a jury question.").

**B.     Statute of Repose**

P&GPPC next argues that Wisconsin's construction statute of repose bars plaintiff's claims. Wis. Stat. § 893.89. The statute precludes claims for injury brought more than ten years after the date of substantial completion of an improvement to property. *Kohn v. Darlington Comm. Sch.*, 2005 WI 99, ¶¶ 13-15, 283 Wis. 2d 1, 698 N.W.2d 794. It "provides that a cause of action must be commenced within a specified amount of time after the defendant's action which allegedly led to injury, regardless of whether the plaintiff has discovered the injury or wrongdoing." *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, 291 Wis. 2d 132, 150, 715 N.W.2d 598, 607 (quoting *Tomczak v. Bailey*, 218 Wis.2d 245, 252, 578 N.W.2d 166 (1998)). An improvement is a permanent addition to or betterment of real property that enhances the capital value, involves the expenditure of labor and money, and is designed to make the property more useful and valuable. *Id.* ¶ 17. P&GPPC contends that the electrical work Anderson performed at the Charmin mill constituted "improvements" and since Anderson retired in 1992, the latest he could have filed his lawsuit was 2002. P&GPPC argues plaintiff did not sue P&GPPC until 2011, and therefore, plaintiff's suit is barred.

But P&GPPC fails to take into account the enumerated exceptions to the application of the statute of repose. *See* Wis. Stat. § 893.89(4). Among the exceptions listed, the statute of repose

11

does not apply to "[d]amages that were sustained before April 29, 2004." § 893.89(4)(d). Plaintiff argues that when damages are "sustained" is a distinct question from when a cause of action based on those damages might accrue. This is the only reasonable reading of the statute. Here, plaintiff has presented evidence, including expert opinions, that would establish that Anderson sustained his injury when he was exposed to asbestos during his tenure at the Charmin mill between 1955 and 1979, and in any case before he retired in 1992. While he did not discover the injury until much later due to the latency period typical of asbestos-related diseases, the date his cause of action accrued is irrelevant. P&GPPC has presented no evidence or argument as to the statutory exceptions. Because plaintiff has presented evidence supporting application of the exception stated in § 893.89(4)(d), summary judgment cannot be granted in P&GPPC's favor based on the statute of repose.

Plaintiff has also argued that statute of repose does not apply to "damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property." Wis. Stat. § 893.89(4)(c). While the statute of repose may bar safe place claims resulting from injuries caused by structural defects, it does not bar injuries caused by unsafe conditions associated with the structure. *Mair*, 2006 WI 61, ¶ 18 (citing Wis. Stat. § 893.89(4)(c)). Therefore, the distinction between whether the asbestos insulation constituted a structural defect or an unsafe condition associated with the structure may also be relevant to determining whether plaintiff's claims are or are not barred by the statute of repose. Discerning the difference between the two appears to be a somewhat opaque task, but as a general rule,

> a "structural defect" arises from design or construction flaws when a building element is put in place, whether as an original part of a structure or as a replacement. In contrast, "unsafe conditions associated with the structure" are those that arise

12

from repair or maintenance or a failure to repair or maintain an element of a building that was previously safe.

*Wagner*, 2011 WI App 85, ¶ 21.

It is not clear based on the evidence before me now whether Anderson's alleged injuries were caused by a structural defect or an unsafe condition associated with the structure. However, it is not necessary to decide the issue at this point because I am satisfied that the alleged injury was sustained before April 29, 2004; therefore, summary judgment cannot be granted based on P&GPPC's claim that the statute of repose bars plaintiff's cause of action.

## CONCLUSION

For the foregoing reasons, Defendant P&GPPC's amended motion for summary judgment will be **DENIED**. Plaintiff has presented evidence sufficient to support her claim that P&GPPC may be held liable as a premises owner or primary employer pursuant to the duty created by the Wisconsin safe place statute, Wis. Stat. § 101.11. In addition, plaintiff's claims are not barred as a matter of law by the Wisconsin construction statute of repose, Wis. Stat. § 893.89. Because plaintiff's wrongful death claim is derivative of her negligence claim, P&GPPC's motion for summary judgment as to this claim will be denied as well. In addition, plaintiff's motion and memorandum for leave to file supplemental authority in response to P&GPPC's amended reply brief (ECF No. 80) is **DENIED** as moot. The Clerk will set this matter on the court's calendar for further scheduling.

**SO ORDERED** this __14th__ day of February, 2013.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court